IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>JARON DAVIS,<br><br>*Defendant.* | Criminal No. 2:19-cr-268 – 2<br>Civil No. 2:25-cv-1618<br><br>Hon. William S. Stickman IV |

### MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

On February 7, 2023, Jaron Davis ("Davis") pled guilty to Counts One, Two, Four, Six, Seven, Eight, Nine, Ten, Eleven, Thirteen, and Fifteen of the Superseding Indictment – Conspiracy to Commit Hobbs Act Robbery, Hobbs Act Robbery, Brandishing a Firearm in Furtherance of a Crime of Violence, and Possession of a Firearm by a Convicted Felon. (ECF No. 92).[1] The parties entered into a plea agreement pursuant to Federal Rule of Civil Procedure 11(c)(1)(C) ("Rule 11(c)(1)(C)"), and part of that agreement involved the Government dismissing Counts Three, Five, and Twelve of the Superseding Indictment (each charging a violation of 18 U.S.C. § 924(c)(1)(A)(i)), and the collective mandatory 21 years of consecutive prison time attendant to those counts. The parties further agreed and stipulated that the appropriate sentence was 180 months of imprisonment consisting of 96 months of imprisonment at Counts One, Two, Four, Six, Seven, Eight, Nine, Eleven, Thirteen, and Fifteen to be served

---

[1] Citations herein shall be to the criminal case record at Criminal No. 2:19-cr-268–2.

1

concurrently, followed by a consecutive sentence of 84 months of imprisonment at Count Ten. (ECF No. 497-1, pp. 4, 6).

The Court imposed the parties' negotiated sentence on June 13, 2023, as it found it to be reasonable and just in the circumstances of this case.[2] (ECF Nos. 522 and 530). Davis planned and participated in the robbery at gunpoint of a number of local businesses from approximately 2:00 PM on December 14, 2018, through approximately 1:00 AM on December 19, 2018, – a Rite Aid in Oakmont, PA (December 14); a Family Dollar in Penn Hills, PA (December 14); a Speedway gas station in Monroeville, PA (December 15); a BP gas station in Wilkins Township, PA (December 16); a Home Goods store in Monroeville, PA (December 17); and a CoGo's gas station in Pittsburgh, PA (December 18). (ECF No. 374 at 68-74). Some of the robberies he committed by himself, and others he committed with his co-defendants. Davis brandished a firearm to terrorize employees and customers into compliance with his demands. The Court imposed the negotiated sentence because it believed that Davis's sentence was appropriate in light of its consideration of the 18 U.S.C. § 3553(a) factors – particularly the nature and circumstances of the offense, Davis's history and characteristics, and the need for the sentence

---

[2] Davis's total offense level being 28 with a criminal history category of III resulted in a guideline range of 97 to 121 months of imprisonment. In addition, the guideline sentence for Count Ten was the minimum term of imprisonment required by statute, 84 months, and had to be imposed consecutively. This resulted in a guideline range of 181 to 205 months of incarceration. (ECF No. 506; ECF No. 530, pp. 7–8). The Government correctly notes that had Davis proceeded to trial and been convicted,
> he would have faced a guideline range (under the pre-November 2023 Guidelines) of 121-151 months, plus 28 years (or 336 months) of mandatory consecutive prison time (for the four violations of 18 U.S.C. § 924(c)(1)(A)(ii)), for an aggregate total of 457 months (approximately 38 years) to 487 months (approximately 40½ years).[ ] Even with a reduced Criminal History Category as a result of Amendment 821, the defendant's guideline range would [have] been 108-135 months, plus 336 months of mandatory consecutive prison time, for an aggregate effective guideline range of 440 months (37 years) to 471 months (39.25 years).

(ECF No. 543, p. 2) (footnote omitted).

imposed to reflect the seriousness of Davis's offenses, to promote respect for the law, provide just punishment for the offenses, and to afford adequate deterrence to Davis's criminal conduct. (ECF No. 530, pp. 11–19, 21–22).

Davis is currently serving his term of imprisonment at Gilmer FCI with an anticipated release date of October 28, 2031. *See www.bop.gove/inmateloc/.* On October 16, 2025, he filed a Motion to Vacate, Set Aside or Correct Sentence Pursuant to Section 2255, Title 28 of the United States Code ("§ 2255 Motion").[3] (ECF No. 556). In Ground One, Davis claims that his due process rights under the Fifth and Fourteenth Amendment were violated because City of Pittsburgh Police Sergeant Brain Marckisotto ("Sergeant Marckisotto") allegedly lied during the evidentiary hearing on October 6, 2021. In Ground Two, he claims that these same rights were violated when the Government allegedly used perjured testimony from Sergeant Marckisotto and City of Pittsburgh Police Detective Christopher Kertis ("Detective Kertis") at the October 6, 2021, evidentiary hearing. In Ground Three, Davis claims that his counsel, Marvin Miller ("counsel"), provided constitutionally deficient representation at the October 6, 2021, evidentiary hearing when he allegedly failed to cross-examine Sergeant Marckisotto with respect to an inconsistent statement he made in a prior state proceeding. In Ground Four, Davis claims that counsel was constitutionally ineffective for "failing to investigate the basis and reliability of the 'BOLO' . . . used to justify the initial stop and subsequent arrest." (*Id.* at 4–12). The record, supplemented by the Court's personal knowledge of this case having presided over it since the filing of the indictment, conclusively negates the factual predicates asserted by Davis in support of his motion and establishes that he is not entitled to relief. Because of this, the Court holds that

---

[3] This motion was also filed at 2:25-cv-01618 at ECF No. 1.

an evidentiary hearing is unwarranted. Davis's motion will be denied for the following reasons, and a certificate of appealability will not issue.

### I. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct a sentence:

> [U]pon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255(a). As a remedy, the court must "vacate and set the judgment aside and ... discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). Relief under this provision is "generally available only in 'exceptional circumstances' to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Gordon*, 979 F. Supp. 337, 339 (E.D. Pa. 1997) (citation omitted).

In reviewing a motion to vacate under § 2255, "[t]he court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (cleaned up). Where, as here, the petitioner files his motion *pro se*, the Court construes the pleadings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation[.]" *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000). A district court is required to hold an evidentiary hearing on a motion to vacate sentence filed pursuant to § 2255, unless the motion, files, and records of the case show conclusively that the movant is not entitled to relief. *See* 28 U.S.C. § 2255(b); *Booth*,

432 F.3d at 545-46; *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994). Thus, if the record conclusively negates the factual predicates asserted in support of a § 2255 motion, or if the movant would not be entitled to relief as a matter of law, even if the factual predicates as alleged in the motion are true, an evidentiary hearing is not required. *See Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985).

The Court finds no need for an evidentiary hearing because, as will be explained below, the record conclusively establishes that Davis is not entitled to relief.

## II.   ANALYSIS

### A.   Grounds One and Two

In Ground One, Davis claims that his due process rights under the Fifth and Fourteenth Amendments were violated because Sergeant Marckisotto allegedly lied during the evidentiary hearing. In Ground Two, he claims that these same rights were violated when the Government allegedly used perjured testimony from Sergeant Marckisotto and Detective Kertis at the evidentiary hearing. The Government argues that Davis is bound by the plain language of his Rule 11(c)(1)(C) plea agreement, his claims are procedurally defaulted, and they are meritless. The Court concurs.

In his Rule 11(c)(1)(C) plea agreement, Davis waived his right to file a § 2255 motion with the exception of a motion raising ineffective assistance of counsel. He waived "the right to file a motion to vacate sentence under 28 U.S.C. § 2255, attacking his conviction or sentence and the right to file any other collateral proceeding attacking his conviction or sentence." (ECF No. 497-1, ¶ A.10). This collateral attack waiver does not, however, prevent Davis from bringing "a claim of ineffective assistance of counsel in an appropriate forum, if otherwise permitted by law." (*Id.*).

Waivers of appeal rights, including collateral attack waivers, are enforceable if they are "entered into knowingly and voluntarily" and do not "work a miscarriage of justice." *United States v. Mabry*, 536 F.3d 231, 237 (3d Cir. 2008), *abrogated in part on other grounds by Garza v. Idaho*, 586 U.S. 232 (2019). Davis does not specifically challenge the knowing and voluntary nature of his waiver, nor does he assert that enforcing the waiver would work a miscarriage of justice. (ECF Nos. 562 and 565). Regardless, the Court is obligated to independently evaluate the waiver's validity. For the following reasons, it finds that Davis knowingly and voluntarily bargained for his Rule 11(c)(1)(C) plea agreement, and that he entered a knowing and voluntary guilty plea. (ECF No. 533).

Both parties signed the written plea agreement which explicitly states that, "Defendant further waives the right to file a motion to vacate sentence under 28 U.S.C. § 2255, attacking his conviction or sentence and the right to file any other collateral proceeding attacking his conviction or sentence." (ECF No. 497-1, ¶ A.10). At the change of plea hearing, Davis stated on the record that he understood all of the waiver provisions in his plea agreement. (ECF No. 533, pp. 36–38). Not only did the Court find Davis competent and capable of entering an informed plea, but it also found that his guilty plea was knowingly and voluntarily made. (*Id.* at 5, 47). In the absence of any evidence or argument from Davis to the contrary, the Court finds that his appellate waiver was knowing and voluntary.

Further, the Court finds that enforcing the collateral attack waiver would not work a miscarriage of justice. A miscarriage of justice is "something grave and out of the ordinary." *Mabry*, 536 F.3d at 239. The United States Court of Appeals for the Third Circuit has adopted a "common sense approach" to this inquiry, and has suggested that courts consider several factors, including: the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a

6

sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result. *Id.* at 242–43. It has also noted that it is "possible for there to be a miscarriage of justice when 'plea proceedings were tainted by ineffective assistance of counsel.'" *United States v. Akbar*, 181 F. App'x 283, 286 (3d Cir. 2006) (citing *United States v. Teeter*, 257 F.3d 14, 25 n.9 (1st Cir. 2001)). However, "a waiver does not become unenforceable simply because the defendant claims ineffective assistance, but only if the record of the criminal proceeding reveals that the claim that the waiver was the result of ineffective assistance of counsel was meritorious." *Id.* at 286–87 (cleaned up) (citation omitted). More generally, the Third Circuit has made clear that "it is not enough that an issue is meritorious; after all, appellate waivers are intended to preclude review not just of frivolous questions, but of difficult and debatable legal issues we would otherwise consider." *United States v. Grimes*, 739 F.3d 125, 130 (3d Cir. 2014) (cleaned up) (citation omitted).

    Here, the Court does not perceive error, let alone a clear, grave error that would constitute a miscarriage of justice. Davis's allegations regarding ineffective assistance do not warrant invalidating his waiver. He does not claim that the waiver itself was the product of ineffectiveness or that he received ineffective assistance of counsel during plea negotiations. His arguments stem from testimony given by officers during the evidentiary hearing on his suppression motion. For these reasons, and those set forth in the Government's response at ECF No. 562, which is incorporated by reference into this ruling, Davis has failed to show that enforcing the waiver will cause a miscarriage of justice. Accordingly, the Court holds that the waiver is effective, and it bars Grounds One and Two.

### B. Grounds Three and Four

In Ground Three, Davis claims that his counsel provided deficient representation at the October 6, 2021, evidentiary hearing when he allegedly failed to cross-examine Sergeant Marckisotto with respect to an inconsistent statement he made in a prior state court proceeding. Davis also claims that counsel was not sufficiently prepared because he did not have his notes with him. (ECF No. 556, p. 10). In Ground Four, Davis claims counsel was ineffective for "failing to investigate the basis and reliability of the 'BOLO' [(i.e., Be On the Look Out)]. . . used to justify the initial stop and subsequent arrest." (*Id*. at 4–12). These claims do not afford Davis relief for the following reasons.

Under the Sixth Amendment to the United States Constitution, a defendant has the right to effective assistance of counsel. A defendant relying on an allegation of ineffective assistance of counsel to support their request for relief under § 2255 bears the burden of establishing that counsel's performance was deficient. *Burt v. Titlow*, 571 U.S. 12, 23 (2013). "[T]he absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Id*. (quoting *Strickland v. Washington*, 466 U.S. 668, 690 (1984)). To prove ineffective assistance of counsel, a defendant must establish both deficiency and prejudice:

> [first,] that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*United States v. Travillion*, 759 F.3d 281, 289 (3d Cir. 2014) (quoting *Strickland*, 466 U.S. at 687). The Third Circuit has explained:

As the Supreme Court has stated, "the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim." *Engle v. Isaac*, 456 U.S. 107, 134, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). On review, we "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Berryman v. Morton*, 100 F.3d 1089, 1094 (3d Cir. 1996) (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052). "In essence, 'the defendant must show that counsel's representation fell below an objective standard of reasonableness' meaning 'reasonableness under prevailing professional norms.'" *Id.* (quoting *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052). Regarding the interplay between *Strickland* and § 2255, if [a defendant] shows both elements of *Strickland*, he satisfies the requirements of § 2255. *See United States v. Rad–O–Lite of Phila., Inc.*, 612 F.2d 740, 744 (3d Cir. 1979) ("[P]ersons ... can attack a conviction for fundamental defects, such as ineffective assistance of counsel.").

*Id.* at 289.

As to Davis's issue regarding counsel's alleged failure to adequately cross-examine Sergeant Marckisotto, the Court's review of the record indicates that despite not having his notes during the evidentiary hearing, counsel cross-examined Sergeant Marckisotto extensively with respect to Sergeant Marckisotto's prior written statements.[4] (ECF No. 374, pp. 151–53, 159–62, 163–65). Further, he made use of both parties' documentary and video exhibits. He pursued a coherent strategy of attempting to undermine Sergeant Marckisotto's credibility.

A defendant has the right to effective cross-examination under the confrontation clause, but not perfect cross-examination. *See Ross v. Dist. Atty of the Cnty. of Allegheny*, 672 F.3d 198,

---

[4] For example, as the Government accurately points out, counsel attempted to undermine Sergeant Marckisotto's credibility:
> by challenging the Sergeant's description of Penn Avenue as a "high-crime" area (ECF 374 at 170-172); by challenging Sergeant Marckisotto's determination that the Rogue had engaged in "evasive" maneuvers (ECF 374 at 165-170); by challenging Sergeant Marckisotto's observation of "infertive" movements (ECF 374 at 174-75); by highlighting inconsistencies and omissions in prior reports written by and about Sergeant Marckisotto (ECF 374 at 151-153; 159-163); and by attempting to insinuate that Sergeant Marckisotto had altered his report to provide an after-the-fact justification for the traffic stop. (ECF 374 at 149-151).

(ECF No. 562, p. 17).

208 (3d Cir. 2012) (stating "[Defendant] had what the Confrontation Clause guaranteed—'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish'" (quoting *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987)). Witness examination methods fall within the realm of trial strategy and necessitate a strong level of deference to the attorney's decisions. *Diggs v. Owens*, 833 F.2d 439, 444–45 (3d Cir. 1987) ("An attorney is presumed to possess skill and knowledge in sufficient degree to preserve the reliability of the adversarial process and afford his client the benefit of a fair trial."). The subject matters covered during cross-examination and the number of questions presented on each subject fall within the sound discretion of counsel. Nothing in the Court's review of the record suggests the counsel's representation fell below an objective level of reasonableness.

Nevertheless, Davis claims that in a prior state court proceeding, Sergeant Marckisotto testified that there was no indication that a firearm was in the vehicle. Davis argues this is inconsistent with Sergeant Marckisotto's testimony at the evidentiary hearing and that counsel should have cross-examined the officer on this point. (ECF No. 556, pp. 4–5); (ECF No. 565, p. 5). Assuming that Sergeant Marckisotto previously testified that he had no indication that there was a firearm in the vehicle, and counsel knew about the testimony, Sergeant Marckisotto's testimony was not inconsistent with his testimony at the evidentiary hearing. Sergeant Marckisotto testified at the evidentiary hearing that he was concerned that a firearm **may** be in the vehicle based on: (1) the SPIN message; (2) the BOLO; (3) the location of the stop; and (4) the movements and actions of the vehicle's occupants.[5] (ECF No. 374, pp. 131, 132, and 135).

---

[5] The Court set forth the facts adduced at the evidentiary hearing in its January 10, 2022, Memorandum Opinion denying suppression. (ECF No. 392). Those facts are incorporated herein.

Davis has failed to show any deficiency in counsel's questioning of Sergeant Marckisotto as there is no inconsistency in the testimony and, as noted above, counsel pursued a coherent strategy of attempting to undermine Sergeant Marckisotto's credibility. Counsel's cross-examination of Sergeant Marckisotto did not fall below an objective standard of reasonableness.

Furthermore, Davis cannot show prejudice. He had to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Prejudice resulting from ineffective assistance of counsel cannot be based on mere speculation as to what witnesses might have said. *Duncan v. Morton*, 256 F.3d 189, 201–02 (3d Cir. 2001) (citation omitted). Furthermore, as the Government accurately notes, Sergeant Marckisotto's subjective belief regarding the presence of a firearm is irrelevant given that the reasonable suspicion analysis is an objective one. As the Court found in its January 10, 2022, Memorandum Opinion denying suppression, the stop of the vehicle was valid, and Sergeant Marckisotto was justified to order the occupants out of the vehicle with their hands raised and direct them to lift their shirts in order to check for concealed weapons. It held that the officers had reasonable suspicion to believe that the vehicle's occupants were armed and dangerous. (ECF No. 392). The Court's holding was affirmed by the Third Circuit. On appeal, Davis argued that Sergeant Marckisotto lacked reasonable suspicion that the vehicle's occupants were armed and dangerous, making it unlawful for him to order the occupants out of the vehicle and conduct a protective sweep. (ECF No. 555-2, p. 5). The Third Circuit rejected Davis's argument and upheld the Court's opinion, noting in part that because Sergeant Marckisotto saw Monroeville Police Department Detective Corporal Robert Renk's regional bulletin and heard Pittsburgh Police Detective Kevin Williams's BOLO, he was

permitted to rely on both in forming his reasonable suspicion because both officers had reasonable suspicion in the first instance. (ECF No. 555-2). Thus, Ground Three fails.

As to Ground Four, Davis argues that there was no credible evidence linking the vehicle, the white Nissan Rogue, to any of the alleged robberies and that counsel was ineffective for not investigating or challenging the basis of the BOLO. (ECF No. 556, p. 12); (ECF No. 565, pp. 8–10). Davis posits that if counsel had "performed a reasonable investigation, he would have been able to demonstrate that the 'BOLO' was issued without probable cause, reasonable suspicion, or any factual support." (*Id.*). Davis fails to explain how counsel failed to investigate, he does not identify a witness that counsel failed to interview or subpoena, and he does not identify any records he failed to obtain. The Government accurately notes that counsel:

> vigorously challenged the basis of the BOLO, through his cross examination of Detectives Kertis and Renk – the testimony and exhibits established that the BOLO was not intended to be issued as such, and that Detective Renk had concluded earlier in the day that he did not believe there was probable cause to stop the vehicle in connection with the robberies. (ECF 374 at 82 (Det. Renk explaining he did not want the BOLO to be issued), at 98-100 (Mr. Miller cross-examining Detective Renk and Detective Renk acknowledging he did not believe he had probable cause at the time of the SPIN message to stop the vehicle in connection with the robberies).

(ECF No. 562, p. 18).

The Court finds that Davis has not come forth with anything showing that counsel's performance fell below an objective standard of reasonableness. All he offers is mere speculation that an investigation by counsel might have recovered evidence to challenge the basis of the issuance of the BOLO. The Supreme Court has emphasized that "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. *See also Dunn v. Reeves*, 594 U.S. 731, 739 (2021) (holding strategic decisions are entitled to a "strong presumption" of reasonableness.). In

fact, even if there is reason to think that counsel's conduct 'was far from exemplary,' a court still may not grant relief if '[t]he record does not reveal' that counsel took an approach that no competent lawyer would have chosen." *Dunn*, 594 U.S. at 739 (citing *Burt v. Titlow*, 571 U.S. 12, 23–24 (2013)). Here, no indication exists that an unspecified investigation would have led to new information beneficial to Davis as it relates to the BOLO.

Davis has also failed to show prejudice. The following was adduced at the evidentiary hearing as to the investigative information that led to the issuance of the BOLO:

> From December 14, 2018, through December 18, 2018, six armed robberies of businesses were committed in Pittsburgh and its surrounding suburbs. The suspects either displayed a firearm or were believed to be armed. (ECF No. 374, pp. 82-84, 109). A tall black male wearing a distinct blue puffy jacket was involved in all six robberies. (ECF No. 374, pp. 74, 109).
> City of Pittsburgh Police Detective Christopher Kertis ("Detective Kertis") investigated the sixth robbery, which occurred on December 18, 2018, at the CoGo's on E. Carson Street. After reviewing surveillance video from the store and the surrounding area, he determined that the Rogue was used in the robbery. (ECF No. 374, pp. 52-57, 62, 64); (Government Exhibits 18, 21). Detective Kertis provided this information, as well as the Rogue's identifying information, to Monroeville Police Department Detective Corporal Robert Renk ("Detective Renk") on December 19, 2018, as Detective Renk was investigating the robbery that occurred on December 17, 2018, at Home Goods in Monroeville. (ECF No. 374, pp. 57, 68-69, 74-75, 101); (Government Exhibit 6). The officers formulated a "general plan of trying to locate this vehicle, trying to conduct surveillance." (ECF No. 374, pp. 101-02). Detective Renk knew that the Rogue identified by Detective Kertis matched the description of the getaway vehicle used in the December 16, 2018, robbery of BP in Wilkins Township. He also knew that all six robberies were committed by an actor wearing a distinctive blue jacket. (ECF No. 374, pp. 73-75, 102). When Detective Renk entered the Rogue's license plate into the license plate reader system ("LPR system"), he discovered that it was in the Monroeville area at the time of the December 17, 2018, robbery of Home Goods. (ECF No. 374, p. 79). As the Rogue was linked to three of the robberies, Detective Renk believed it was involved in all six. (ECF No. 374, pp. 75, 109).
> At 5:41 p.m., Detective Renk issued a message on SPIN, a law enforcement information sharing network, that described the locations of the robberies, identified an involved actor as wearing "a bright blue winter puffy coat," and stated that "a POSSIBLE vehicle involved in these robberies is a white, Nissan Rogue, Ohio # HIM-5269." The message went on to state "WE DO NOT have PC to stop the vehicle for suspected involvement in the robberies! There are no arrest warrants nor have any Actors been identified." The message then

13

provided, "If you see this vehicle and observe a traffic violation[,] a traffic stop and ID of the occupants would be appreciated. USE Caution they may be armed." (ECF No. 374, pp. 75-77, 83-84, 95-98, 100); (Government Exhibit 10). Despite being "fairly certain" about the Rogue's involvement in the robberies, Detective Renk did not want the vehicle stopped based on the robberies because he wanted to conduct further surveillance so as to learn more about the Rogue and its occupants. None of the robbers had been identified. (ECF No. 374, pp. 76, 98-100, 109). Attached to the SPIN message were photographs of the actors and the Rogue. (ECF No. 374, pp. 76-77).

Detective Renk then entered the Rogue's information into the LPR system in order to receive real-time alerts if it was detected. (ECF No. 374, p. 78). After 8:00 p.m., Detective Renk received alerts that the Rogue was in the Oakland section of Pittsburgh. (ECF No. 374, p. 80). He, along with Monroeville Police Department Detective Matt White ("Detective White") and Penn Hills Police Detective Teresa Gongaware ("Detective Gongaware"), drove in separate vehicles into Pittsburgh in an attempt to locate the Rogue. (ECF No. 375, pp. 80, 103). On the way, Detective Renk asked Detective White to contact the City of Pittsburgh Police Zone 4 station to alert them that they would be in their jurisdiction looking for the Rogue. (ECF No. 374, pp. 80-81).

Detective White called City of Pittsburgh Police Detective Kevin Williams ("Detective Williams") "to let him know that we were going to be in the area, the reason why we were going to be in the area, and the vehicle description so that he would know that we were operating in his area, and that if anything were to happen, that it was going to be us who was doing it." (ECF No. 374, pp. 38, 194). He provided Detective Williams with the vehicle description and that it was suspected of being involved in robberies. (ECF No. 374, pp. 38, 194).

Detective Williams then called the communications section to put out an advisory—a BOLO (i.e., Be On the Look Out). (ECF No. 374, p. 39). A BOLO was broadcast over police dispatch at 9:10 p.m. that provided a description of the Rogue and that it was wanted in connection with armed robberies. (ECF No. 374, pp. 39, 44, 82, 86-87, 102, 122, 186, 195); (Government Exhibit 11).

(ECF No. 392, pp. 2–5) (footnotes omitted). The evidence setting forth the basis for the BOLO was substantial. Davis has not met his burden of establishing that any additional investigation by counsel would have impacted the outcome of the evidentiary hearing, or the Court's determination, which was upheld by the Third Circuit, that the stop of the vehicle was valid, and Sergeant Marckisotto was justified in ordering the occupants out of the vehicle with their hands raised and directing them to lift their shirts to check for concealed weapons. Additionally, as the Government accurately notes:

>The defendant has not identified how different cross-examination or additional investigation would overcome the fact that (1) Sergeant Marckisotto was recorded almost contemporaneously describing that he had seen the vehicle speeding (thus providing reasonable suspicion for the traffic stop); (2) that both a SPIN message and the BOLO had been issued earlier in the same day indicating that the Rogue had been recently used in multiple armed robberies (thus providing reasonable suspicion that the occupants of the Rogue would be armed); and (3) that Detective Renk had at least reasonable suspicion to believe the Rogue was involved in the robberies based on the information he learned from Detective Kertis regarding the CoGo's robbery, from the Wilkins Township police regarding the BP robbery, and from his own involvement in the Home Goods robbery investigation. Those three facts provided reasonable suspicion for the traffic stop, and reasonable suspicion for the protective sweep of the vehicle. And the defendant has not shown how any of his alleged grounds for relief would or could change those facts.

(ECF No. 562, pp. 18–19). Thus, the Court holds that Ground Four fails.[6]

### C. *No certificate of appealability shall issue*

In order to pursue an appeal from a final order in a § 2255 proceeding, a petitioner must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B). A court should issue a certificate of appealability when a petitioner makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). A petitioner meets this burden by showing that

---

[6] The Court declines to address the arguments that Davis raises for the first time in his reply brief (ECF No. 565, pp. 12-31) as they constitute new ineffective assistance of counsel claims to which the Government has not had the opportunity to respond. *See Cherry v. City of Phila.*, 216 F. App'x 205, 209 (3d Cir. 2007) (unpublished) ("[A]rguments raised for the first time in a reply brief are forfeited." (citing *United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005)); *see also United States v. Medeiros*, 710 F. Supp. 106, 110 (M.D. Pa. 1989) ("[I]t is improper for a party to present a new argument in [a] reply brief."); *Battle v. Garza*, No. 1:23-CV-0289, 2023 WL 8373172, at *1 n.2 (M.D. Pa. Dec. 4, 2023) (explaining that habeas petitioner's claims "raised for the first time in a reply brief [ ] are waived"); *Rush v. Shartle*, Civ. No. 13-4788, 2015 WL 5567307, at *2 n.2 (D.N.J. Sept. 22, 2015) (same); *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) (finding that argument first presented in petitioner's "traverse rather than in his habeas petition ... was not properly before the district court and the district court did not err in declining to address it") (collecting cases); *Ryan v. Hendricks*, Civ. No. 04–4447, 2014 WL 268578, at *3 n.4 (D.N.J. Jan. 23, 2014) (same). The prohibition against raising new claims in a reply brief is particularly true here as Davis filed a certification attesting to his awareness that all of his claims had to be raised in a single habeas petition, and that he chose to proceed with his petition as filed. (ECF Nos. 558–60). The Court does not believe it necessary, and prudent, to expend time and resources on issues and arguments that Davis neglected to include in his petition.

reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). No certificate of appealability will issue here. The Court finds that jurists of reason would not find it debatable that Davis has not made a substantial showing of the denial of a constitutional right. He does not present any claims upon which habeas relief may be granted.

### III. CONCLUSION

For the foregoing reasons of law and fact, Davis's motion will be denied by Order of Court to follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

2/25/26
_____
Dated